**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C., | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-13043-JEK |
| | ) | |
| PARUS HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR AN ORDER
ENJOINING DEFENDANT FROM FURTHER PROSECUTING ITS TEXAS ACTION
AND DEFENDANT'S MOTION TO DISMISS**

**KOBICK, J.**

Plaintiff Mintz Levin Cohn Ferris Glovsky and Popeo, P.C. brings this lawsuit against its former client, defendant Parus Holdings, Inc., for breach of contract, quantum meruit, and a violation of M.G.L. c. 93A. Mintz alleges that Parus has failed to pay a success fee of over $2 million, as required by the parties' engagement letter, and has withheld that payment as leverage in its malpractice claim against Mintz. Parus is pursuing that malpractice claim in a separate case that it filed against Mintz in the Western District of Texas one week after this case was initiated. Pending before the Court are two motions. Mintz moves for an order enjoining Parus from further prosecuting its Texas action. Parus moves to dismiss for improper venue, lack of personal jurisdiction, and failure to state a Chapter 93A claim. Alternatively, Parus seeks to stay this case pending resolution of the Texas action or to permit both cases to proceed independently.

For the reasons that follow, Mintz's motion will be denied, and Parus' motion will be granted in part and denied in part. With respect to Mintz's motion, an antisuit injunction is

unwarranted because the claims at issue in this case and the Texas action are not identical and, as a result, adjudicating Mintz's entitlement to the success fee here will not resolve Parus' malpractice claim in Texas. As to Parus' motion, venue is proper in the District of Massachusetts, specific jurisdiction exists over Parus, and Mintz plausibly alleges a claim under Chapter 93A. Parus also fails to demonstrate good cause for a stay of this action, but this case and the Texas action may proceed concurrently.

## BACKGROUND

The following facts are recounted based on the allegations in the complaint and documents sufficiently referenced in that pleading. *Thornton v. Ipsen Biopharmaceuticals, Inc.*, 126 F.4th 76, 81 (1st Cir. 2025). Those facts are also supplemented with the jurisdictional evidence submitted in connection with Parus' motion to dismiss for lack of personal jurisdiction. *See Keane v. Expeditors Int'l of Washington, Inc.*, 138 F.4th 613, 615 (1st Cir. 2025)

Plaintiff Mintz is a law firm based in Massachusetts. ECF 1, ¶ 2. Defendant Parus, which develops and sells voice recognition software, is a Delaware corporation that was headquartered in Illinois but has been based in Texas since 2022. *Id.* ¶ 3; ECF 27, ¶¶ 3-4; ECF 35-1, ¶¶ 11, 19. Following solicitation from Mintz, Parus engaged Mintz for legal services regarding patent litigation three times by sending signed engagement letters from Illinois to Mintz's Boston office on August 4, 2017, July 19, 2019, and September 2, 2021. ECF 35-1, ¶¶ 4-5, 7-10; ECF 27, ¶ 9. Boston-based lawyers undertook the diligence for the first engagement and then oversaw and principally performed the services for the other two engagements. ECF 35-1, ¶¶ 6, 21-23. During the parties' more than five-year relationship, those same lawyers communicated with Parus through frequent calls and by exchanging "thousands of e-mails." *Id.* ¶¶ 12-13. In August 2018, at Parus' request, the parties met in person in Massachusetts to discuss its patent matters. *Id.* ¶ 13.

At issue here is the July 2019 engagement letter. That engagement letter, incorporated by reference in the complaint, formalized Mintz's representation of Parus with respect to "the evaluation, licensing, and monetization of certain patents owned by Parus." ECF 35-2, at 1; *see* ECF 1, ¶ 8. It identified three Boston-based attorneys who would be "'primarily responsible'" for that representation. ECF 35-1, ¶ 8 (quoting ECF 35-2, § II); *see* ECF 1, ¶ 7. In accordance with this engagement letter, Mintz determined whether to pursue litigation in federal court against "target" companies that may have infringed Parus' patents and then filed five infringement actions on behalf of Parus in the Western District of Texas. ECF 1, ¶¶ 9-10; ECF 35-2, § I; ECF 27, ¶¶ 15, 19. Having recovered $11.5 million for Parus in those actions, Mintz is allegedly entitled to a success fee of $2,155,549. ECF 1, ¶¶ 13-15, 19.

Under the July 2019 engagement letter, Mintz agreed to defend Parus if target companies petitioned for *inter partes* review ("IPR") of Parus' patents. ECF 1, ¶¶ 11-12.[1] Parus claims that Mintz committed malpractice in one such IPR proceeding. *Id.* ¶¶ 16, 28; ECF 27, ¶ 25. In that case, the Federal Circuit affirmed the decision of the Patent Trial and Appeal Board ("PTAB"), which invalidated most of Parus' U.S. Patent No. 7,076,431 after declining to consider evidence and arguments that Mintz incorporated by reference in violation of 37 C.F.R. § 42.6(a)(3). *Parus Holdings, Inc. v. Google LLC*, 70 F.4th 1365, 1369-73 (Fed. Cir. 2023); *see* ECF 26-1. Mintz denies that it committed malpractice and alleges that Parus is not paying the success fee in order to improperly gain leverage for its malpractice claim. ECF 1, ¶¶ 1, 16-17, 28.

---

[1] Created by the 2011 Leahy-Smith America Invents Act, the IPR process aims to "improve patent quality and limit unnecessary and counterproductive litigation costs." *Uniloc 2017 LLC v. Hulu, LLC*, 966 F.3d 1295, 1297 (Fed. Cir. 2020) (quotation marks omitted). Through IPR, the U.S. Patent and Trademark Office may "reconsider whether existing patents satisfy the novelty and nonobviousness requirements for inventions." *United States v. Arthrex, Inc.*, 594 U.S. 1, 8 (2021); *see* 35 U.S.C. § 102 (novelty); *id.* § 103 (non-obvious subject matter).

Parus and Mintz have executed a tolling agreement that preserves their respective claims for fees owed and malpractice in connection with the July 2019 engagement letter. *Id.* ¶ 18. The parties entered into the initial tolling agreement in October 2024 and then executed an amended agreement in August 2025 to extend the tolling period from September 1, 2025 until March 1, 2026. ECF 27, ¶¶ 34, 36; *see* ECF 26-3; ECF 26-4. On September 26, 2025, Parus notified Mintz of its malpractice claim, provided Mintz a draft complaint that it intended to file in the Western District of Texas, and offered to mediate that claim. ECF 25, ¶ 14; *see* ECF 26-5. Parus asked Mintz to let it know by October 26, 2025 whether Mintz would agree to mediation, but Mintz never responded. ECF 25, ¶¶ 14-15; ECF 27, ¶¶ 37-38.

Mintz brought this lawsuit on October 17, 2025. ECF 1. The complaint asserts claims for breach of contract (Count I), quantum meruit (Count II), and a violation of Chapter 93A (Count III). *Id.* ¶¶ 20-29. One week later, on October 24, 2025, Parus sued Mintz in the Western District of Texas for legal malpractice. ECF 21-6; ECF 26-6. In December 2025, Mintz moved in this case to enjoin Parus from further prosecuting the Texas action. ECF 20. That same month, Parus filed a motion to dismiss this action for improper venue, lack of personal jurisdiction, and failure to state a Chapter 93A claim under Federal Rules of Civil Procedure 12(b)(3), (b)(2), and (b)(6), respectively. ECF 23. Parus' motion also requested, in the alternative, that this case be stayed pending resolution of the Texas action or to permit both cases to proceed independently. *Id.* After the parties opposed each other's motions and filed reply briefs, the Court held a hearing and took the motions under advisement.

4

## DISCUSSION

The Court first addresses Parus' motion contesting venue, personal jurisdiction, and the plausibility of Mintz's Chapter 93A claim before turning to Mintz's motion and Parus' alternative requests to either stay this action or permit the case to proceed concurrently with the Texas lawsuit.

### I.    Venue.

Parus first moves to dismiss the complaint for improper venue under Federal Rule of Civil Procedure 12(b)(3). In resolving such a motion, the Court accepts the well-pleaded allegations in the complaint as true. *See Turnley v. Banc of Am. Inv. Servs., Inc.*, 576 F. Supp. 2d 204, 211 (D. Mass. 2008). Under the general venue statute, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). To determine whether a district is one in which a substantial part of the events occurred, the Court "look[s] 'not to a single triggering event prompting the action, but to the entire sequence of events underlying the claim.'" *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 12 (1st Cir. 2009) (quoting *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001)). The Court "do[es] not focus on the actions of one party"; instead, it "takes a 'holistic view of the acts underlying a claim.'" *Id.* (quoting *Uffner*, 244 F.3d at 43 n.6). And because venue may lie in more than one district, the Court is "not required to determine the best venue, merely a proper venue." *Id.*

In Parus' telling, venue is improper in the District of Massachusetts because the complaint lacks factual support for its allegation that "a substantial part of the events or omissions giving rise to the claims occurred in this district." ECF 1, ¶ 6. This argument overlooks a number of the complaint's factual allegations. As alleged, Parus sent to the Commonwealth a signed engagement letter with Mintz, a law firm based in Massachusetts, in which Parus agreed to pay Mintz a success

5

fee. *Id.* ¶¶ 2, 5, 13. Mintz's attorneys in the Commonwealth furnished legal services pursuant to the engagement letter, which provided that their services were governed by Massachusetts law. *Id.* ¶ 5. Based in part on the services of those attorneys, Mintz is allegedly entitled to the success fee. *Id.* ¶¶ 5, 15-16. Parus' failure to pay that fee gives rise to Mintz's claims for breach of contract, quantum meruit, and a violation of Chapter 93A. *See id.* ¶¶ 20-29. Taken together, these allegations are sufficient to establish venue. *See Astro-Med*, 591 F.3d at 12 (venue was proper in Rhode Island where the parties "entered into an employment contract" and the plaintiff "was headquartered" and felt "the harms" from the alleged torts); *Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Ints. in Int'l & Foreign Cts.*, 898 F. Supp. 2d 301, 317 (D. Mass. 2012) (venue was proper in Massachusetts, where the plaintiff performed most of the contract).

Parus further contends that venue is improper because the action could have been brought in the Western District of Texas, where it is headquartered. *See* ECF 1, ¶ 3; 28 U.S.C. § 1391(b)(1). While Texas may also be a proper venue, this does not mean that the District of Massachusetts is an improper venue. *See JLB LLC v. Egger*, 462 F. Supp. 3d 68, 83 (D. Mass. 2020). Nor is the Court "required to determine the best venue, merely a proper venue." *Astro-Med*, 591 F.3d at 12 *see Uffner*, 244 F.3d at 43 ("§ 1391 contemplates that venue may be proper in several districts"). Venue is therefore proper in this District under 28 U.S.C. § 1391(b)(2).

## II.    <u>Personal Jurisdiction.</u>

Parus next moves to dismiss the complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). In considering such a motion, the Court may use one of three methods to assess whether Mintz has met his burden to establish personal jurisdiction: the prima facie method, the preponderance method, or the likelihood method. *See A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 & n.5 (1st Cir. 2016). The prima facie method is "most commonly

6

employed in the early stages of litigation." *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83-84 (1st Cir. 1997). Under that approach, the Court must ask whether Mintz has proffered "evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016). Mintz cannot simply "rely on unsupported allegations in [its] pleadings." *A Corp.*, 812 F.3d at 58 (quotation marks omitted). It must instead "go beyond the pleadings and make affirmative proof." *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 94 (1st Cir. 2024) (quotation marks omitted). The Court will give "credence to [Mintz's] version of genuinely contested facts," *Baskin-Robbins*, 825 F.3d at 34, and will consider Parus' proffered facts "only to the extent that they are uncontradicted," *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007).

In a diversity case such as this one,[2] Mintz must ordinarily show that the Court's exercise of jurisdiction over Parus meets the requirements of the Massachusetts long-arm statute, M.G.L. c. 223A, § 3, and the constitutional minimum demanded by due process. *See Rosenthal*, 101 F.4th at 94-95. But because Parus limits its jurisdictional objection to constitutional grounds, "the court need only consider those particular grounds." *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 122 (1st Cir. 2022).[3] "Due process dictates that a court may only assert its power over an out-

---

[2] The Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000, as the complaint seeks over $2 million in damages. ECF 1, at 7-8. There is also complete diversity of citizenship, as Mintz, a professional corporation, is incorporated and principally based in Massachusetts, while Parus, a business corporation, is incorporated in Delaware and has a principal place of business in Texas. *Id.* ¶¶ 2-3; ECF 2; *see Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 738-40 (7th Cir. 2004) (collecting cases holding that a professional corporation is treated like any other corporation when determining its citizenship for purposes of diversity jurisdiction).

[3] Both parties assert that the Massachusetts long-arm statute is coterminous with due process limits on personal jurisdiction, but that is not the case. *See Ward v. AlphaCore Pharma, LLC*, 89 F.4th 203, 209 (1st Cir. 2023) ("the reach of the Massachusetts statute is not congruent with the reach of the Due Process Clause"); *accord SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 330 n.9

of-forum defendant if the party has 'such contacts with the forum [State] that the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair play and substantial justice.'" *Sec. & Exch. Comm'n v. Gastauer*, 93 F.4th 1, 8 (1st Cir. 2024) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)). The due process inquiry "has long focused on the nature and extent of 'the defendant's relationship to the forum State.'" *Ford Motor Co.*, 592 U.S. at 358 (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of California, S.F. Cnty.*, 582 U.S. 255, 262 (2017)).

Mintz contends that the Court has specific, not general, jurisdiction over Parus. *See id.* at 358-60 (distinguishing general and specific jurisdiction). The exercise of jurisdiction over Parus thus satisfies due process if Mintz can "show that (1) its claim directly arises out of or relates to [Parus'] forum activities; (2) [Parus'] forum contacts represent a purposeful availment of the privilege of conducting activities in that forum, thus invoking the benefits and protections of the forum's laws and rendering [Parus'] involuntary presence in the forum's courts foreseeable; and (3) the exercise of jurisdiction is reasonable." *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 7 (1st Cir. 2018). "This test is flexible and fact-specific, written more in shades of grey than in black and white." *Rosenthal*, 101 F.4th at 95 (quotation marks omitted).

A.    Relatedness.

Mintz has established that its claims arise out of, or relate to, Parus' activities in Massachusetts. To determine relatedness for Mintz's contract and contract-related claims, the Court evaluates whether the contract was formalized and executed in Massachusetts and whether

---

(2017). Nevertheless, by raising only constitutional arguments, Parus has waived any statutory objection. *See Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016) (defendants "waived any argument that the long-arm statute does not reach as far as the Fifth Amendment allows" by "treat[ing] the statutory and constitutional standards as identical").

"the contract itself subjected [Parus] to 'substantial control and ongoing connection to [Massachusetts] in the performance of [the] contract.'" *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 259-60 (1st Cir. 2022) (quoting *Adelson*, 510 F.3d at 49). This inquiry evaluates whether Parus' activity in the Commonwealth "was instrumental either in the formation of the contract or its breach." *Id.* at 258-59 (quotation marks omitted). It also focuses on "'the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Cossart v. United Excel Corp.*, 804 F.3d 13, 20 (1st Cir. 2015) (quoting *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 66 (1st Cir. 2014)).

Parus contends that relatedness has not been shown because it executed the July 2019 engagement letter in Illinois for litigation it contemplated being pursued outside of Massachusetts. *See* ECF 27, ¶¶ 14-17; ECF 24, at 10. In its telling, its contacts with the Commonwealth were not instrumental in the formation or breach of that engagement letter. But the First Circuit has found relatedness where, as here, a defendant "had an ongoing connection with Massachusetts in the performance under the contract" and the plaintiff's "claims [arose] from the alleged breach of that contract." *C.W. Downer*, 771 F.3d at 66. In that case, the foreign corporate defendant contracted remotely with the Massachusetts-headquartered plaintiff to be its financial advisor, the parties collaborated for four years via phone and email but never met in person, and the defendant allegedly failed to make certain payments under the contract. *Id.* at 63-64.

The evidence here similarly establishes relatedness. Parus repeatedly communicated by phone and email with Mintz attorneys in Boston pursuant to their roughly five-year contractual relationship, met once in person in Massachusetts at its own request, and allegedly breached the July 2019 engagement letter by failing to pay Mintz the contractually required success fee. ECF 35-1, ¶¶ 12-13; ECF 35-3, ¶ 4; *see* ECF 1, ¶¶ 5, 7-17. Parus does not deny knowing that Mintz was

9

headquartered in Massachusetts. ECF 27, ¶ 17. Parus also signed the 2019 engagement letter—which it sent, like the 2017 and 2021 letters, to Massachusetts—that made three Boston-based lawyers "'primarily responsible'" for its legal services. ECF 35-1, ¶¶ 5, 8, 10 (quoting ECF 35-2, § II); *see Cossart*, 804 F.3d at 20 (finding relatedness where the defendants procured a contract "with a Massachusetts resident to be performed by the resident primarily from Massachusetts"). On this record, Mintz has proffered sufficient evidence to show relatedness.

B.    Purposeful Availment.

Mintz has also established that Parus purposefully availed itself of the Massachusetts market. To meet that requirement, Mintz must identify "some act by which [Parus] purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Rosenthal*, 101 F.4th at 96 (quotation marks omitted). The inquiry focuses on the voluntariness of Parus' actions—that is, whether its contacts with Massachusetts resulted from its own actions—and the foreseeability that its connection with Massachusetts might cause it to be haled into the Commonwealth's courts. *See id.* "In contract cases," the First Circuit has "found that the exercise of jurisdiction is reasonably foreseeable when 'the defendant deliberately direct[ed] its efforts toward the forum state' . . . or when the defendant 'enter[ed] a contractual relationship that envisioned continuing and wide-reaching contacts in the forum State.'" *LP Sols. LLC v. Duchossois*, 907 F.3d 95, 104 (1st Cir. 2018) (quoting *C.W. Downer*, 771 F.3d at 68). The latter situation applies here.[4]

Parus should have anticipated that Mintz would provide services in Massachusetts because it knew that Mintz is headquartered there and the July 2019 engagement letter made three Boston-

---

[4] The former situation is inapplicable because Mintz solicited Parus to be its client. ECF 27, ¶ 9.

based lawyers "primarily responsible" for its legal services. ECF 35-1, ¶¶ 3, 8 (citation omitted); *see* ECF 27, ¶ 17. Mintz performed extensive services for, and exchanged voluminous communications with, Parus from within Massachusetts. ECF 35-1, ¶¶ 12-13. For over five years, lawyers and other staff in Mintz's Boston office "led" and "[p]rimarily" provided those services, albeit in connection with litigation outside of the Commonwealth. *Id.* ¶¶ 13, 21-23; *see Cossart*, 804 F.3d at 21-22 (finding purposeful availment where plaintiff "did significant work for [defendant] in Massachusetts" that was foreseeable based on the parties' contractual relationship). The parties met in person in Massachusetts, too. ECF 35-1, ¶ 13.[5] Throughout their contractual relationship, Parus caused Mintz "to undertake extensive activities on [Parus's] behalf within Massachusetts." *C.W. Downer*, 771 F.3d at 67. Those continuous services in the Commonwealth, which required "intensiv[e]" collaboration between the parties, "are attributable to" Parus because they "were undertaken at [Parus'] request." *Id.* at 67, 69. That is enough for purposeful availment.

C.     Reasonableness.

The final element is whether the exercise of jurisdiction over Parus would be fair and reasonable. That inquiry requires consideration of the following factors: "(1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *Baskin-Robbins*, 825 F.3d at 40 (quotation marks omitted). Courts employ "a sliding scale" approach, with the importance of this reasonableness inquiry varying with the strength of the plaintiff's showing on the relatedness and

---

[5] While Parus may dispute this meeting, Mintz's "evidence is accepted as true and all inferences are drawn in favor of [its] jurisdictional claim." *Adelson*, 510 F.3d at 50; *see* ECF 27, ¶ 22.

purposeful availment inquiries. *Id.* The purpose of applying these "factors is to aid the court in achieving substantial justice." *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 717 (1st Cir. 1996).

On balance, the factors establish that the exercise of jurisdiction over Parus would not offend due process. As a Delaware corporation that has its principal place of business in Texas, Parus contends that appearing in Massachusetts, where it has no offices and no reason to travel, would be burdensome. ECF 27, ¶¶ 4-5, 33. But because "it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction," Parus "must demonstrate that 'exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way.'" *Nowak*, 94 F.3d at 718 (quoting *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994)). Parus fails to meet the requisite evidentiary showing. *See Pritzker*, 42 F.3d at 64 (modern travel "creates no especially ponderous burden for business travelers"). And the forum Parus prefers for this litigation—the Western District of Texas—would be no less burdensome for Parus. As Parus acknowledged at the hearing, none of its executive officers live in Texas.

The second and third factors also weigh in favor of exercising jurisdiction. "Massachusetts has 'significant' interests in providing a convenient forum for disputes involving its citizens and in ensuring that its companies have easy access to a forum when their commercial contracts are said to be breached by out-of-state defendants." *C.W. Downer*, 771 F.3d at 70 (citation omitted). With respect to the third factor, "Parus concedes that Mintz has an interest in obtaining convenient and effective relief in Massachusetts, as it has an office there." ECF 24, at 13. Mintz also represents that most of the relevant materials can be found at its Boston office. ECF 35-1, ¶ 23.

The fourth factor, concerning judicial efficiency, favors neither party. Parus argues that this Court should dismiss or stay this action or allow the Texas matter to proceed because Texas was central to the parties' dispute. Mintz counters that Texas is not connected to either party's claims,

and that the Commonwealth should resolve the case because the July 2019 engagement letter contained a Massachusetts choice of law provision. *See* ECF 35-2, § VI.A. But "federal district courts are in the regular practice of applying laws of other fora." *C.W. Downer*, 771 F.3d at 71 (quotation marks omitted).

The fifth factor, which addresses the states' interest in promoting substantive social policies, further supports the exercise of jurisdiction. "Massachusetts has an interest in protecting its citizens" and providing them "a convenient forum in which to bring their claims." *Nowak*, 94 F.3d at 719. For purposes of this factor, Parus does not dispute the interest of Massachusetts or contend that Texas has a greater interest in adjudicating the claims. Accordingly, Mintz has met its burden to show that subjecting Parus to litigation in this forum comports with traditional notions of fair play and substantial justice. *See C.W. Downer*, 771 F.3d at 69-71 (reasonableness inquiry met involving Massachusetts plaintiff who raised contractual claims against Canadian defendant).

## III.    Plausibility of the Chapter 93A Claim.

Parus finally moves to dismiss Mintz's Chapter 93A claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In evaluating such a motion, the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quotation marks omitted). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court "may properly consider only facts

and documents that are part of or incorporated into the complaint." *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) (quotation marks omitted).

Section 11 of Chapter 93A prohibits "an unfair or deceptive act or practice" that "occurred primarily and substantially within the commonwealth" between those "engage[d] in the conduct of any trade or commerce." M.G.L. c. 93A, § 11. An act or practice is unfair if it falls "'within at least the penumbra of some common-law, statutory, or other established concept of unfairness'" or "'is immoral, unethical, oppressive, or unscrupulous'" and "'causes substantial injury to consumers or other businesses.'" *Columbia Plaza Assocs. v. Ne. Univ.*, 493 Mass. 570, 587 (2024) (quoting *H1 Lincoln, Inc. v. S. Washington St., LLC*, 489 Mass. 1, 14 (2022)). To state a claim under Section 11, Mintz must allege facts sufficient to "establish (1) that [Parus] engaged in an unfair method of competition or committed an unfair or deceptive act or practice . . . ; (2) a loss of money or property suffered as a result; and (3) a causal connection between the loss suffered and [Parus'] unfair or deceptive method, act, or practice." *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 469 Mass. 813, 820 (2014). A "breach of contract alone" is insufficient for purposes of Section 11. *Nicosia v. Burn, LLC*, 496 Mass. 792, 800 (2025) (quotation marks omitted).

In Parus' view, the complaint lacks facts to support that its alleged misconduct "occurred primarily and substantially within the commonwealth." M.G.L. c. 93A, § 11. Considering the facts "in the context of the entire § 11 claim," the Court must "determine whether the center of gravity of the circumstances that give rise to [Mintz's] claim[s] is primarily and substantially" in Massachusetts. *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 438 Mass. 459, 473 (2003). To do so, the Court may examine, among other things, where the alleged misconduct took place and "the 'situs of loss.'" *Skyhook Wireless, Inc. v. Google Inc.*, 86 Mass. App. Ct. 611, 622 (2014) (quoting *id.* at 472 n.13, 474-475). This determination "does not turn on any specific factors," *FTI,*

14

*LLC v. Duffy*, 104 Mass. App. Ct. 484, 488 (2024), and cannot "be reduced to any precise formula," *Kuwaiti*, 438 Mass. at 472. Parus bears "the burden of proof." M.G.L. c. 93A, § 11.

Parus fails to meet its burden at this preliminary stage. Accepted as true, Mintz is a law firm based in Massachusetts that Parus has failed to pay for successful litigation provided, in part, by its attorneys in the Commonwealth pursuant to the July 2019 engagement letter. ECF 1, ¶¶ 2, 5, 13-16. The fact that Parus allegedly harmed Mintz at its headquarters in Massachusetts by depriving its attorneys there of money contractually owed is sufficient, at this juncture, to satisfy Section 11. *See Auto Shine Car Wash Sys., Inc. v. Nice 'N Clean Car Wash, Inc.*, 58 Mass. App. Ct. 685, 689 (2003) (center of gravity satisfied where "the deception and resulting harm that form the basis of the § 11 claim both occurred in Massachusetts"); *Resolute Mgmt. Inc. v. Transatlantic Reinsurance Co.*, 87 Mass. App. Ct. 296, 300-01 (reversing dismissal of Section 11 claim where plaintiff alleged that "the loss occurred in Massachusetts" and many of its disputed bills "related either to Massachusetts insurers or claimants," even though there was "no rule requiring a § 11 plaintiff to plead facts with particularity sufficient to withstand a claim by the defendant that the center of gravity of his claim is not within the Commonwealth").

Parus also argues that Mintz's Chapter 93A claim amounts to a mere breach of contract. The Court disagrees. According to the complaint, Parus "intentionally failed to pay the fees which it expressly agreed to pay and to which Mintz is clearly entitled" in order to gain "improper leverage in its dispute with Mintz over the handling of the . . . *inter partes* petition." ECF 1, ¶¶ 17, 28. Such "conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair" trade practice. *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 474 (1991) (quotation marks omitted). By alleging that Parus used its breach of the engagement letter "as leverage to extract additional benefits not covered by the

15

contract" in its separate malpractice case, Mintz has stated a plausible Chapter 93A claim. *H1 Lincoln*, 489 Mass. at 15; *see Zabin v. Picciotto*, 73 Mass. App. Ct. 141, 170 (2008) (breaching party violates Chapter 93A by using "its failure to make payments as a wedge against the other party to gain advantages"). Accordingly, Mintz's Chapter 93A claim survives.

## IV.   Enjoining Parus from Prosecuting Texas Action.

Mintz separately moves to enjoin Parus from further prosecuting the Texas action because this case was filed first. The first-to-file rule, also known as the prior pending action doctrine, "covers scenarios in which actions involving the same parties and similar subject matter are pending in different federal district courts and the overlap between the two suits is nearly complete." *Maldonado-Cabrera v. Anglero-Alfaro*, 26 F.4th 523, 526 (1st Cir. 2022) (quotation marks omitted). This rule may not apply "where (1) there are special circumstances justifying an exception, such as where a party engages in misleading conduct to win a race to the courthouse; and (2) the balance of convenience substantially favors the second-filed action." *OneBeacon Am. Ins. Co. v. Celanese Corp.*, No. 14-cv-13992-FDS, 2015 WL 1962168, at *6 (D. Mass. May 1, 2015) (quotation marks omitted). If applicable, "the usual practice is for the court that first had jurisdiction to resolve the issues and the other court to defer." *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996). The first court "may," in "its equitable discretion," also "enjoin a party before it from attempting simultaneously to litigate the same matter with the same opponent in another [federal district] court." *Small v. Wageman*, 291 F.2d 734, 735-36 (1st Cir. 1961). Issuing such an antisuit injunction turns on "whether parallel suits involve the same parties and issues." *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 18 (1st Cir. 2004); *see Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463 (Fed. Cir. 1990) (under First Circuit law, "a primary question is whether the issues and parties are such that the disposition of one case

16

would be dispositive of the other"). If that condition is not met, "a court ordinarily should . . . refuse the issuance of an . . . antisuit injunction." *Quaak*, 361 F.3d at 18.

The parties disagree whether the first-to-file rule applies. Parus contends that the rule is inapplicable because Mintz improperly brought this action in anticipation of Parus' lawsuit and the balance of convenience favors permitting both cases to proceed concurrently. In contrast, Mintz argues that the rule applies because it filed this action one week before Parus initiated the Texas lawsuit, the parties are substantially similar in the two actions, and both cases involve the parties' obligations under the July 2019 engagement letter.

The Court need not resolve this issue. Assuming, without deciding, that this is the first-filed action, the Court declines to exercise its discretion to enjoin Parus from prosecuting the Texas action. That is so because the claims at issue in the two cases are not the same, and adjudicating this action would not resolve the Texas lawsuit. Mintz acknowledges that "the claims in the actions [are] not identical," but it contends that they "meet the substantial similarity threshold." ECF 21, at 11. Although substantial similarity is sufficient for purposes of the first-to-file rule, antisuit injunctions require identical claims. *Compare TPM Holdings*, 91 F.3d at 4 ("similar subject matter"), *with Small*, 291 F.2d at 735 ("same cause of action" and "same matter"), *and Quaak*, 361 F.3d at 18 ("same . . . issues"). In *Small*, upon which Mintz principally relies, the First Circuit affirmed an antisuit injunction issued by the first-filed court in New Hampshire because "the entire controversy [could] be adjudicated" there while "the subsequent action in Massachusetts . . . [might] not adjudicate the entire controversy." 291 F.2d at 736. But here, adjudicating Mintz's entitlement to the success fee in this case will not resolve Parus' malpractice claim in the Texas action. An antisuit injunction is therefore unwarranted. *See Katz*, 909 F.2d at 1464 ("the Massachusetts district court exceeded its discretionary authority in enjoining the . . . action in New

York" because "major issues [would] not be resolved in the Massachusetts action"); *Cong. Credit Corp. v. AJC Int'l, Inc.*, 42 F.3d 686, 689-90 (1st Cir. 1994) (citing *Thermal Dynamics Corp. v. Union Carbide Corp.*, 214 F. Supp. 773, 774 (S.D.N.Y. 1963) for the proposition that "in order to properly enjoin suit in another court, the issues 'must have such an identity that a determination in one action leaves little or nothing to be determined in the other'").

Mintz protests that Parus' malpractice claim is a compulsory counterclaim in this case. If the malpractice claim "arises out of the transaction or occurrence that is the subject matter of" Mintz's claims and "does not require adding another party over whom the court cannot acquire jurisdiction," it would be a compulsory counterclaim. Fed. R. Civ. P. 13(a)(1). As relevant here, "the 'transaction or occurrence' standard requires only a 'logical relation' between the claims," which "exists when 'the same aggregate of operative facts serves as the basis of both claims.'" *Kress Stores of Puerto Rico, Inc. v. Wal-Mart Puerto Rico, Inc.*, 121 F.4th 228, 245 (1st Cir. 2024) (quoting *Iglesias v. Mut. Life Ins. Co. of New York*, 156 F.3d 237, 241-42 (1st Cir. 1998)).

That standard is not met. True, as the tolling agreement represents, both parties' claims arise out of Mintz's performance of legal services for Parus under the July 2019 engagement letter. *See* ECF 1, ¶ 18. But Mintz's claims and Parus' malpractice claim rest on "entirely different" sets of facts. *Iglesias*, 156 F.3d at 242. Mintz alleges that it is entitled to a success fee pursuant to the 2019 engagement letter based on its recovery of $11.5 million in infringement actions for Parus. ECF 1, ¶¶ 13-15. The merits of this claim will depend on the calculation prescribed by the engagement letter and the amount recovered by Mintz in those actions. *See* ECF 35-2, § IV.5. Unrelated to such successful lawsuits, Parus asserts that Mintz committed malpractice in its handling of a particular IPR proceeding on U.S. Patent No. 7,076,431 by, among other things, failing to adhere to PTAB's rules. ECF 26-6, ¶¶ 7-14, 159-166. Whereas Mintz's case addresses

18

whether Parus breached the engagement letter, Parus' claim of professional negligence turns on whether Mintz and its attorneys "were negligent and failed to exercise a reasonable degree of care and skill required of prudent and reasonably careful patent lawyers when performing their duties to Parus." *Id.* ¶ 162.

Mintz concedes in its complaint that the success fee is "separate" from the malpractice claim, which concerns "other services" that it performed pursuant to the 2019 engagement letter. ECF 1, ¶¶ 1, 16, 28. In other words, Mintz is not suing Parus for unpaid legal fees in connection with the disputed IPR proceeding, but rather for a success fee associated with other successful patent litigation. *See In re Iannochino*, 242 F.3d 36, 41-42, 47 (1st Cir. 2001) (affirming that the plaintiffs' malpractice claim was a compulsory counterclaim because "their allegations of malpractice [arose] from the defendants' legal advice relating to the bankruptcy," which "formed the basis of [the lawyer's] fee application" and subsequent award of fees by the bankruptcy court); *Crawl Space Door Sys., Inc. v. White & Williams, LLP*, No. 23-2319, 2024 WL 1554062, at *2 (3d Cir. Apr. 10, 2024) (same where "the alleged deficiencies in [defendant's] services in the New Jersey action [bore] a logical relationship to the collection claim for legal fees from the same action" and both actions thus concerned "whether [defendant] performed properly in the New Jersey action"). Nor does Mintz's Chapter 93A claim require resolution of Parus' malpractice claim, as Mintz argued for the first time at the hearing. The Chapter 93A claim asserts that Parus unfairly leveraged the malpractice claim in an effort to avoid its contractual obligations under the 2019 engagement letter. Conceptually, as Mintz acknowledged at the hearing, it could prevail on that Chapter 93A theory even if Parus' malpractice claim has merit. Accordingly, Parus' malpractice claim is not a compulsory counterclaim, and Parus will not be enjoined from further prosecuting the Texas action.

19

**V.**    **Staying this Case or Permitting Independent Proceedings.**

In the alternative, Parus seeks a stay or an order permitting this case to proceed concurrently with the Texas action. The latter request will be granted for the same reasons that Mintz's motion was denied. The former request, however, will be denied. While "federal courts possess the inherent power to stay proceedings for prudential reasons," *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004), "there must be good cause" to do so, *Marquis v. F.D.I.C.*, 965 F.2d 1148, 1155 (1st Cir. 1992). Having argued that this case and the Texas action are distinct, Parus provides no valid basis for a stay here and even acknowledges that its request "does not fit any of the more common stay scenarios." ECF 24, at 16. A stay is thus unwarranted. The parties assert different claims in separate actions, and those actions may proceed concurrently.

**CONCLUSIONS AND ORDERS**

For the foregoing reasons, Mintz's motion to enjoin Parus from further prosecuting its Texas action, ECF 20, is DENIED. Parus' motion to dismiss, ECF 23, is GRANTED with respect to permitting this case and the Texas action to proceed concurrently but is otherwise DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK

Dated: April 14, 2026                    UNITED STATES DISTRICT JUDGE

20
